UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAMON COOK, et al.                                    CIVIL ACTION

VERSUS                                               NO: 24-02517

MAKO CATERING, LLC, et al.                           SECTION: T (5)

## ORDER AND REASONS

Before the Court is a Motion to Certify Collective Action filed by Damom Cook and Jonathan Keno ("Plaintiffs"). R. Doc. 17. Defendants Mako Catering, LLC, and Mako Unlimited, LLC, have filed an opposition. Defendants have also filed a Motion to Dismiss Party Mako Unlimited, LLC. R. Doc. 20. Plaintiffs have filed a response in opposition. R. Doc. 22. After reviewing the pleadings and the applicable law, the Court will grant the Motion to Certify Collective Action (R. Doc. 17) and deny the Motion to Dismiss Party (R. Doc. 20).

**BACKGROUND**

According to Plaintiffs, Mako Catering employs cooks and stewards. Mako Unlimited employs riggers. Damom Cook was a Mako Catering employee, and Jonathan Keno was employed by both Mako Catering and Mako Unlimited. Plaintiffs claim that neither was a seaman under the Fair Labor Standards Act ("FLSA"). Both were paid a day rate, with an overtime policy, namely that they were paid overtime if they worked over twelve hours in a day, but not if they worked over forty hours in a week.

1

According to Plaintiffs, the typical offshore week is seven days on, at twelve hours a day, for eighty-four hours. Therefore, Plaintiffs allege Cook and Keno worked forty-four hours that should have been paid overtime, but they were not paid overtime for that work. Instead, Plaintiffs allege, both Mako companies have a confidential policy: that Mako employees actually are paid overtime, but they do not know it. Plaintiffs assert that, under Mako's confidential policy, Mako's day rate encompasses an hourly rate plus overtime, but it is paid as a day rate; in other words, the hourly rate is backed out from the day rate and that hourly rate includes overtime.

Plaintiffs contend Mako's policy is precisely contrary to the FLSA. 29 CFR § 778.112 provides how to calculate overtime for a day-rate employee, and it is not "your day rate already includes your overtime rate." Plaintiffs allege that all Mako employees were under the same overtime policy. Mako Catering and Mako Unlimited treated all its employees the same: they were all paid a day rate under the same confidential policy. Mako did not otherwise break down employees by type: Mako did not put them into different groups based on where they worked, what type of vessel they worked on, or anything else. Therefore, they allege, all Mako Catering and Mako Unlimited employees who worked offshore and were paid a day rate under Mako's confidential policy are similarly situated, and the Court should certify a collective action to include them all.

Defendants MAKO Unlimited and MAKO Catering maintain that they are separate and distinct offshore staffing companies that previously employed Cook and Keno. Cook worked for MAKO Catering from September 2020 to September 2023, serving as a Cook on five different

vessels. Cook's job required him to work with the captain to order food within a budget and create a menu based on the crew's need for optimal performance; be familiar with safety issues associated with food; maintain storage areas; maintain inventory of food supplies; maintain cleanliness of kitchen and kitchen appliances; and inspect kitchen equipment. Cook was answerable to the captain, ate all his meals on the vessel, and slept on the vessel, for the vessel cannot operate without a cook.

Defendants assert that Cook's job duties were critical to and had an impact on the safe operation and navigation of the vessel. A primary duty was ensuring that food was not contaminated, and would not sicken people on the vessel, because illness on board could prevent the vessel from safely operating and fulfilling its transportation function. Cook's additional duties reduced the risk of fires, slips, and falls, ensured safe kitchen operations, safely transported groceries, and kept appliances, countertops, and floors clean and sanitized. Defendants assert that Cook did not track the amount of time he spent preparing meals for the vessel crew versus non-crew contractors. He also never recorded how much time he spent preparing meals for those operating the crane. Recording that time and differentiating between the hours spent preparing meals for those who operated the crane versus those who did not would have been extremely difficult. Cook's pay stubs and weekly timesheets reflect that he was paid overtime for his work at MAKO Catering and executed acknowledgements confirming overtime pay.

Keno worked for MAKO Unlimited on 18 different offshore vessels from January 2021 to October 2023. He worked as a Steward (also known as Utility, BR, and Galley Hand) and rigger.

3

As a steward, Keno performed laundry duties, maintained rooms, and cleaned the dishes and galley to support the safe and efficient navigation of the vessel. He further supported the vessel's mission by ensuring comfortable and safe living conditions. Keno also helped prepare food to ensure that it was cooked properly. Keno's work included reducing fire hazards and maintaining a safe and sanitary environment.

As a Rigger, Keno's job duties included working with the captain to assess weight, size and placement of cargo to ensure vessel stability; being familiar with rigging equipment and safety issues associated with rigging, lifting loads and securing cargo; attaching hooks, chains and cables to maintain safe lifts of equipment; communicating by hand or radio with team members; and inspecting and cleaning rigging hardware, all of which affects the safe and efficient navigation of the vessel. Keno's pay stubs and timesheets reflect that he was paid a day rate, received overtime pay for working more than 12 hours a day, and acknowledged receipt of that overtime.

Cook and Keno have filed a collective action complaint on behalf of themselves and others similarly situated to recover overtime wages and other damages from Mako Catering and Mako Unlimited. R. Doc. 1. The primary assertion by Plaintiffs is that Mako employees were not categorized and are not exempt under FLSA as seamen. They contend that they and the putative collective members are similarly-situated, and the case should proceed as a collective action. Defendants maintain that Plaintiffs are exempt from the FLSA. Defendants oppose collective action mainly on the basis that each employee was FLSA-exempt and their job duties were so varied and dependent on unknown factors that collective action would be onerous to defend.

4

Plaintiffs seek to certify a collective action defined as: "All Mako Unlimited and Mako Catering employees who were paid a day rate, between October 21, 2021 and the date of the Court's order." R. Doc. 17-1, p. 9. They also ask the Court to approve the proposed notice; to order that Mako provide names, email addresses, physical addresses, and cell phone numbers for its employees falling within the definition above within ten days of the Court's order; to order that plaintiffs may send the proposed notice by mail, email, and text message once within ten days of receipt of the information; and again thirty days thereafter; and, to afford the potential collective action members sixty days from Mako's provision of the information required by the Court for collective action members to join.

**LAW and ANALYSIS**

"The FLSA's baseline requirement is that any employee who works 'longer than forty hours' in a workweek must be compensated 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Breaux v. Alliance Liftboats, LLC*, Civ. A. No. 24-1000, 2025 WL 2830778 (quoting *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 369 (5th Cir. 2021) (in turn quoting 29 U.S.C. § 207(a)(1)). Under 29 U.S.C. § 216(b), "[a]n action to recover the liability" for an employer's violation of the FLSA's overtime provisions "may be maintained against any employer . . . in any . . . court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." As the Court in *Breaux* pointed out, the Fifth Circuit has laid out the framework for the § 216(b) analysis of whether employees are similarly situated:

To decide whether a group of employees is similarly situated, the district court must consider whether merits questions can be answered collectively. After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be similarly situated for purposes of answering the relevant legal questions on the merits. If answering the merits questions requires a highly individualized inquiry into each potential opt-in's circumstances, then the employees are likely not similarly situated. It is the plaintiffs' burden to establish that they are similarly situated.

Pre-*Swales* [*v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021)], district courts following the *Lusardi* [*v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. Nov. 5, 1987)] approach considered three factors when deciding whether employees were "similarly situated": (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. While *Swales* rejected *Lusardi*'s two-step method of "conditional certification" and notice followed by a motion to decertify, courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis given the similarities between *Swales* and *Lusardi*'s second step. That said, use of these factors is not mandatory, as there is no one-size-fits-all analysis or mechanical test to apply: The bottom line is that the district court has broad, litigation-management discretion, cabined by the FLSA's "similarly situated" requirement.

*Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329 (5th Cir. 2023) (cleaned up).

"At the core of the 'similarly situated' inquiry is the question whether the issues in the case can be adjudicated collectively." *Breaux, supra*, at *2 (quoting *Hill v. Muscogee Cnty. Sch. Dist.*,

6

No. 03-60, 2005 WL 3526669, at *3 (M.D. Ga. Dec. 20, 2005)). The plaintiff has the burden of demonstrating that the employees in the collective class as he defined it are similarly situated. Id. (citing *Loy*, 71 F.4th at 337). The defendant, as the employer, will have the burden of establishing that the seaman exemption applies by a preponderance of the evidence. *Id.* (citing *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020)).

Plaintiffs argue that they and the putative collective action members are similarly situated because they are subject to one policy and they are not otherwise categorized because Defendants deploy them wherever they are needed. Plaintiffs quote the testimony of Mako's representative to support these contentions. Thus, they argue that Mako's employees are subject to the same policy; Mako did nothing to differentiate among its employees that would make some differently-situated from others; and there will be no singular difficulty for the Court in trying the matter together. Plaintiffs point out that the numbers are not insurmountable because Mako has had between 20 and 50 employees at a time.

Under the first *Loy/Lusardi* factor, the Court must determine whether the plaintiffs and opt-ins are too diverse a group to be similarly situated for purposes of answering the relevant legal questions on the merits. Plaintiffs argue that Mako did not categorize its employees as to their job duties and that they are all subject to the same company-wide standards, policies, procedures. Defendants counter that the cooks, stewards, and riggers employed by the two Mako companies had different responsibilities, though all were intended to aid in the navigation and safety of the vessels. In *Breaux*, the court noted that courts have looked to whether there are "substantial

7

allegations that potential members were together victims of a single decision, policy, or plan." *Breaux, supra*, at \*2 (quoting *Caballero v. Kelly Servs., Inc.*, No. 14-1828, 2015 WL 12732863, at \*3 (S.D. Tex. Oct. 5, 2015)). This factor weighs in favor of collective action, because all employees were subject to the same overtime policy regardless of their specific duties or geographical location.

The second *Loy/Lusardi* factor considers the various defenses available to Defendants that appear to be individual to each plaintiff. Defendants contend that their employees performed seaman's work and thus were exempt from the FLSA. Consequently, they argue, to show that each employee is classified as a seaman would require extensive individualized evidence as to their duties on any given day, including whether crew members or non-crew members were served and consumed the food prepared by the cooks. The Court does not find that individualized evidence as to the actual duties of the plaintiffs and opt-ins would overwhelm the Court, certainly not at this juncture. At any rate, if the Court later finds that the defenses are too individualized, it retains the discretion to decertify the collective action if "the potential defenses would make the class unmanageable." *Nguyen v. Versacom, LLC*, No. 3:13-CV-04689, 2016 WL 6650860, at \*5 (N.D. Tex. Nov. 9, 2016).

The third *Loy/Lusardi* factor, fairness and procedural considerations, also supports collective action. The purpose of such action is to lower costs to the plaintiffs through the pooling of resources and to limit the controversy to one proceeding, which efficiently resolves common issues of law and fact that arise from the same alleged activity. *See Mahoney v. Farmers Ins. Exch.*,

No. 4:09-CV-02327, 2011 WL 4458513, at *10 (S.D. Tex. Sept. 23, 2011).

A recent decision from this Court supports the Court's decision to certify the collective action. In *Breaux*, the plaintiff sought to recover unpaid overtime wages from the defendants under the FLSA. He alleged that he worked as a cook aboard the L/B MIAMI and that he was paid a day rate regardless of the number of hours he worked in a week. *Breaux, supra*, at *1. He alleged that he regularly worked over 40 hours per week but that he was misclassified as exempt from state and federal overtime law and did not receive overtime wages. *Id.* In certifying collective action, the Court reasoned that working in different facilities or having different job titles did not preclude a finding that the putative collective members were similarly situated because they were governed by an unwritten uniform policy or practice classifying them as FLSA-exempt seamen not entitled to overtime pay. *Id.*, at *4. The Court observed that Defendants allegedly had a policy that classified all of its lift boat employees on all nine of its lift boats as FLSA-exempt seaman rendering a service that was primarily an aid in the operation of such vessel as a means of transportation, without regard to whether they performed a substantial amount of work of a different character. *Id.* Plaintiff alleged that the proposed collective was similarly situated because Defendant assumed all of its employees were FLSA-exempt and, accordingly, issued a blanket policy not to pay overtime. *Id.* The Court concluded that there was a common question at issue: whether the putative members of the collective working on lift boats were affected by a common policy or practice classifying all of them as FLSA-exempt seaman rendering a service that was primarily an aid in the operation of such vessel as a means of transportation, without regard to

9

whether they performed a substantial amount of work of a different character. *Id.*, at *9. The Court further found that fairness and procedural considerations favored certification of the collective because they were subject to a single policy and moving forward as a collective was in the interest of judicial economy. *Id.*, at * 10.

As in *Breaux*, the Court will certify the proposed collective action under its broad litigation-management discretion. The proposed collective satisfies the similarly-situated requirement of 29 U.S.C. § 216(b). The Court at this time discerns no manageability pitfalls that would preclude certification, which will ultimately promote judicial economy by avoiding duplicative trials.

Accordingly,

**IT IS ORDERED** that the Motion to Certify Collective Action is GRANTED. The parties are instructed to confer and agree upon a revised notice within 14 days of the date of this order.

**IT IS FURTHER ORDERED** that Motion to Dismiss Mako Unlimited (R. Doc. 20) is DENIED AS MOOT.

New Orleans, Louisiana, this 31st day of March 2026.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

10